**No. 39882.**—Protest 736692–G of Continental Mexican Rubber Co. (New York).

CLINE, Judge: In this suit against the United States, the plaintiff claims that the collector of customs at the port of New York erroneously assessed duty at the rate of 10 percent ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked.

The record shows that the merchandise, the subject of this controversy, consists of crude rubber imported from Mexico. The invoice indicates that the rubber was consigned by the Continental Mexican Rubber Co. of Estacion Catorce, S. L. P. Mexico, to the Continental Mexican Rubber Co. of New York, N. Y. The rubber was entered and passed free of duty, and the only question involved relates to the marking duty.

The plaintiff called the sales manager of the importing firm as a witness. He testified that he examined the shipment on the pier in Brooklyn, N. Y., and found that each case bore the legend "Catorce, S. L. P. Mex."; that the factory of the firm was located in the town of Catorce in Mexico; that the letters "S. L. P." stand for "San Luis Potosi" which is a state in Mexico; and that before delivery of the merchandise he was not required to mark the rubber itself. We assume that the crude rubber was not capable of being marked.

Counsel for the plaintiff argues in his brief that section 304 (a) does not require that the name of the country of origin shall be marked on imported goods, citing *P. Lorillard & Co.* v. *United States*, 24 C. C. P. A. 90, T. D. 48412; that all that is required is that merchandise shall be marked sufficiently to indicate the country of origin; and that the words "Catorce S. L. P. Mex." are sufficient to indicate that Mexico is the country of origin of the rubber. The plaintiff cites the following cases in which a marking has been held sufficient, although the full name of the country of origin was not given: *W. A. Camp Co.* v. *United States*, Abstract 37656, where the legend "B. N. Borneo" was held sufficient to indicate "British North Borneo"; *Ocean Leather Corp.* v. *United States*, Abstract 32638, wherein it was held that the words "Product of Anegada B. V. I." were sufficient to indicate "British Virgin Islands"; and *A. & P. Packing Co., Inc.* v. *United States*, Abstract 38243, wherein it was held that the words "Producte of G'T Britain" were sufficient to indicate that Great Britain was the country of origin. Other cases of similar import are *International Publishers, Inc.* v. *United States*, Abstract 34635, wherein the marking "Printed in U. S. S. R. 7th Printshop of Iskra Revolutzi Moscow" was held sufficient to indicate that the Union of Soviet Socialist Republics was the country of origin; and *Abercrombie & Fitch Co.* v. *United States*, Abstract 36598, wherein the marking "Swiss Made" was held sufficient for merchandise from Switzerland.

Counsel for the plaintiff argues further that the abbreviation "Mex." is well known in this country as meaning "Mexico" and, since mail addressed in the same words as the legend on the cases herein involved would undoubtedly reach its destination, users and purchasers of merchandise containing such marking would understand that it originated in Mexico.

Counsel for defendant contends in his brief that the marking on the goods in this case is not in the English language and therefore does not meet the require-

ments of the law. We find that the word "Catorce" appears in Rand McNally's World Atlas and in the International Encyclopaedia; in the latter work it is described as a city of Mexico in the State of San Luis Potosi having a population of 17,820.

When foreign names of countries are the names known to the American citizens and are used in the reference books and literature of this country we must consider them as English words also, or the marking provision could not be enforced.

In the case of *American Burtonizing Co.* v. *United States*, 13 Ct. Cust. Appls. 652, T. D. 41489, the court held that the word "Aisne", used in connection with certain French words, was not sufficient to indicate that France was the country of origin of the goods. In explaining the purpose of the marking provisions of the Tariff Act of 1922, the court said at page 654:

Obviously, the purpose of section 304, which goes into great detail as to how the marking shall be done, was to require a marking such as would be understood by purchasers of foreign-made goods as giving definite and reliable information as to the country of origin. It is not reasonable to suppose that Congress, by the use of the word "indicate," meant only that the words used should *hint* at the country of origin. The object sought to be obtained by the legislature could best be obtained by an indication which was clear, plain, and unambiguous and which did more than merely *hint* at the country of origin. We do not think that Congress intended that American purchasers, consumers, or users of foreign-made goods should be required to speculate, investigate, or interpret in order that they might ascertain the country of origin.

This excerpt has been quoted and the decision cited in numerous decisions of the appellate court in construing the provisions of section 304 of the Tariff Act of 1930, citing *William Camp Co.* v. *United States*, 24 C. C. P. A. 142, 144, T. D. 48623; *P. Lorillard & Co., Inc.* v. *United States, supra.*

The question in this case is, Does the name of a city in Mexico coupled with the abbreviation "Mex." marked on the cases of crude rubber merely "hint" at the country of origin or is it such a marking as would be understood by American purchasers, consumers, or users of goods as giving definite and reliable information as to the country of origin thereof?

The collector required that the full name "Mexico" be marked on the cases. In the case of *P. Lorillard & Co., Inc.* v. *United States, supra*, the court stated that the name of the country of origin would be the best legend to use to mark merchandise but suggested that the statute indicated that an alternative might be used. The court said:

* * * It is presumed that both the exporter and the importer know the country of the origin of their goods. It is no greater burden for them to cause to be placed upon the importation the name of the country of origin *or some other term which will definitely indicate that country*, than to have placed thereon a term which does not adequately do so. * * * [Italics ours.]

In the case cited the court held that the word "Samos" marked on bales of tobacco did not indicate that the merchandise originated in Greece. In that case there was no attempt made in the marking to connect Samos, the island, with Greece, the country to which it belonged. In the instant case the facts are somewhat different. Here the packing cases were marked with the name of the city in Mexico where the goods originated and the abbreviation "Mex." to connect the city with the country. The initials of a State in Mexico were included also. It is an address such as is usually placed on matter to be delivered through the mail. The name of the city and the initials of the State might not inform a purchaser of the country of origin of the goods, but, when the abbreviation "Mex." is added, a contraction commonly used to indicate "Mexico," the complete legend would seem to indicate that the goods originated in Mexico. We are of opinion that, although the legend used on the packing cases does not name the country of

origin, it is "some other term which will definitely indicate that country." Such a conclusion is in harmony with the line of decisions cited by the plaintiff, and, following the rule in said decisions, we sustain the protest herein. Judgment will be entered in favor of the plaintiff.